**SO ORDERED.**

**SIGNED this 02 day of April, 2008.**

_____
**Randy D. Doub
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
ELIZABETH CITY DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| SEA RANCH II OWNERS ASSOCIATION, INC. | 07-04475-8-RDD |
| DEBTOR | |

**ORDER DENYING MOTION TO WAIVE INSURANCE**

This matter is before the court on the debtor's motion to waive the requirement for insurance. An expedited hearing was held in Wilson, North Carolina on March 31, 2008.

The debtor filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code on November 28, 2007. The debtor owns 96 units and 5 commercial bays in a five-story, oceanfront timeshare building in Dare County, North Carolina. On March 26, 2008, after having been granted an application to reduce response time, the debtor filed the pending motion, indicating that the debtor's insurance coverage would terminate on March 31, 2008. Local Bankruptcy Rule 4002-1(b)(4) requires a chapter 11 debtor to "keep the property of the debtor insured in a manner and to the extent as may be deemed necessary and prudent with loss payable clauses, in the case of pledged or mortgage property, in favor of the appropriate secured creditors as their interests may appear."

The debtor seeks to waive this requirement because of the inability of the debtor to obtain insurance coverage beyond the termination date of the current policy.

At the hearing, counsel for the debtor explained that the property had been insured through the insurance agency of the company that had previously managed the property of the debtor at a cost of approximately $5,000.00 per month. The state court appointed receiver, Mr. Michael Flanagan, had attempted to obtain replacement coverage, but had been unable to find appropriate coverage. Counsel also argued that, should the receiver find coverage, the cost would most likely be prohibitive, as the receiver's funds are limited. Counsel for the debtor indicates that there is no real reason to require insurance in this case because the value of the debtor's asset is worth less than the cost of the insurance. Although the property was valued at $120,000.00 at the time of the debtor's filing, the property is worth much less now because the building is not being operated and there is no market for the debtor's shares unless the entire building is sold.

Counsel for the debtor further indicated that the debtor's plan now is to sell the property. Although the debtor has been unsuccessful in obtaining a bid from anyone or in obtaining marketing funds, the debtor believes it can amend the declaration to allow dissolution of the timeshares in the building. At that point, the entire building could be sold.

Counsel for Sea Ranch II, Inc. ("SRII"), the developer of the timeshare units and owner of approximately 43% of the timeshare units, indicated that, in response to the debtor's motion, SRII had filed a motion to dismiss or convert the debtor's case. Counsel argued that, pursuant to 11 U.S.C. § 1112(b)(1), "absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this

chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." Pursuant to 11 U.S.C. § 1112(b)(4)(C), "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is cause for conversion or dismissal. Counsel for SRII explained that the debtor is the only entity that can get an insurance policy on the building. All other owners of timeshares and bays in the building cannot purchase insurance because they are not the home owners association. Counsel stated that the debtor cannot get the votes necessary to dissolve the timeshares and therefore will not be able to seek sale of the entire building.

Mr. Ben Krause, one of 450 owners of timeshares in Sea Ranch II, indicated that the owners are concerned about the building not having insurance. He indicated that the building needs insurance coverage for liability, fire and flood. In his opinion, he indicated that the building does have value as it is grandfathered out of the current building setback restrictions from the ocean.

Mr. Flanagan, receiver for the debtor, testified that he polled the owners of timeshares after being appointed as receiver last year. The owners were overwhelmingly in favor of selling the property, as opposed to buying out SRII, the largest stakeholder in the property. After entering settlement negotiations with SRII, which resulted in no settlement, Mr. Flanagan came to the conclusion that the property would have to be sold without the agreement of anyone.

Mr. Flanagan indicated that, in January or February 2008, he had contacted the management company through which the current insurance policy existed, but they were unable to assist the debtor with extending the insurance, as the current coverage was on the management company's master policy. Mr. Flanagan then contacted Mr. Norm Shearin, counsel for SRII, to determine if SRII might be able to assist the debtor with obtaining insurance coverage. SRII indicated that it could not place the debtor on its insurance policy, but did provide the name of its insurance agent

3

so that Mr. Flanagan could contact her. Mr. Flanagan contacted two insurance agents regarding coverage on the debtors' building. Both had asked for additional information, but had not yet told Mr. Flanagan whether they would be able to provide coverage on the building. Mr. Flanagan also spoke with Strother Smith, the representative of the owners appointed by Judge Tenille to the Board of Directors prior to Mr. Flanagan's appointment. He requested that he seek assistance with finding insurance coverage from the other owners. However, Mr. Smith never responded and Mr. Krause indicated that neither he nor the other owners with whom he has had contact ever received such a request from Mr. Smith.

Mr. Flanagan testified that he has between $44,000.00 and $45,000.00 left in funds on hand donated by the weekly owners prior to the filing of the bankruptcy. Mr. Flanagan indicated that he did not feel these funds would be sufficient to purchase a year-long policy of insurance, but would only be sufficient to cover a few months of coverage. Mr. Flanagan testified that it is his hope to have the property sold by early July.

Mr. James Overton testified that he is the president of SRII, which owns approximately 430 weeks and 9 of the 14 commercial bays in the timeshare building. Mr. Overton testified that the building is oceanfront and therefore susceptible to damage from hurricanes and northeasters. Although there are protective sandbags in place, there are no sand dunes and some of the sandbags have not been covered with sand and vegetation, which is required to be completed prior to May 1, 2008. Mr. Overton explained that, should the building be destroyed, it could not be built back in the same location because of the erosion rate and structure setback requirements.

Mr. Overton indicated that he had spoken with several agents about the possibility of insuring his interests in the building, but he is unable to do so as only the homeowners' association

can procure insurance for the building. Mr. Overton admitted that he has not offered to pay anything for the costs of insurance because he has not been informed of the costs associated with insurance on the building. He explained that it is his position that the debtor still owes SRII and that SRII had not paid any fees to the debtor since the bankruptcy case was filed for that reason. Mr. Overton indicated that, although he wants a sale of the entire building, he is unwilling to talk about an agreement to sell the building without there also being an agreement regarding the state-court litigation between the parties. Mr. Overton indicated that SRII would consider assisting the debtor with insurance coverage for a few months, but would not respond to whether SRII would pay 43% of the insurance costs, as representative of SRII's ownership interest in the building.

Mr. Krause testified that his recommendation to the other owners would be to agree to the sale of the building. He also testified that, in his opinion, SRII should be made to incur 43% of the cost of insurance, as he is willing to pay according to his share, which would be approximately 0.00653%. Mr. Krause also indicated that he would be willing to assist the receiver in finding insurance coverage. Mr. Krause discussed his position with a group known as "Save Our Sea Ranch." He explained that he puts out a newsletter periodically to help the other owners understand the status of the case. Although Mr. Krause indicated that he agreed with the sale of the building, he felt that the plan should be changed to pay out to owners based on their percentage of ownership.

It appears to the court that the only insurance option is to seek to insure the entire building and grounds, in order to protect the timeshare interests of the debtor, but also of SRII, which owns 43% of the timeshare units, as well as other individual timeshare owners. Therefore, insurance on the entire building and grounds is deemed necessary and prudent to protect the interests of the debtor-in-possession and other owners.

5

Therefore, the debtor's motion to waive insurance is **DENIED**.  The debtor-in-possession and receiver are ordered to use their best efforts, using reasonably prudent person business judgment, to obtain property and casualty insurance on the building and grounds. SRII, Mr. Overton, and Mr. Krause are ordered to fully cooperate, using their best efforts and reasonably prudent person business judgment, with Mr. Flanagan to assist with obtaining insurance coverage for the building and grounds.  The Bankruptcy Administrator is also ordered to cooperate and provide assistance, information, and possible insurance sources to Mr. Flanagan for obtaining property and casualty insurance for the building and grounds.  Mr. Krause shall be the contact person for all other owners with whom he has been in contact and to keep them informed on the status of the case.  SRII is ordered to pay 43% of the cost of property and casualty insurance that is obtained on the building and grounds.  Payment shall be made by certified check to the receiver within 24 hours of the receiver giving notice to SRII that insurance has been obtained.

**SO ORDERED**.

**END OF DOCUMENT**